

COMMITTEE ON CRIMINAL LAW
of the
JUDICIAL CONFERENCE OF THE UNITED STATES
Gerald R. Ford Federal Building
110 Michigan Street, N.W., Room 602
Grand Rapids, MI 49503

Honorable Paul J. Barbadoro
Honorable Raymond W. Gruender
Honorable Judith C. Herrera
Honorable Ellen Segal Huvelle
Honorable Sterling Johnson, Jr.
Honorable Cindy K. Jorgenson

Honorable Irene M. Kelley
Honorable Theodore A. McKee
Honorable Franklin L. Noel
Honorable Charles R. Norgle, Sr.
Honorable Margaret Casey Rodgers
Honorable Keith Starrett
**Honorable Robert Holmes Bell, Chair**

TELEPHONE
616-456-2021

FACSIMILE
616-456-2538

February 16, 2012

MEMORANDUM

To:      Judges, United States District Courts
         United States Magistrate Judges

From:    Honorable Robert Holmes Bell
         Chair, Judicial Conference Committee on Criminal Law

RE:      COST-CONTAINMENT STRATEGIES RELATED TO PROBATION AND
         PRETRIAL SERVICES OFFICES  (IMPORTANT INFORMATION)

　　　　I write to you as Chair of the Judicial Conference Committee on Criminal Law. Given the budget constraints under which the probation and pretrial services program are operating, it is imperative that we align our resources effectively to address those cases that are more complex and pose the greatest risks to community safety, while reducing expenditures in less complex and lower risk cases when it is prudent to do so. We ask your assistance in this effort by ordering reduced scope investigations and supervision services in appropriate cases. The attached document provides specific information on reduced services options and the costs associated with them. We encourage you to discuss the document with your colleagues and chief probation and pretrial officers.

　　　　If you have any questions or suggestions for the Criminal Law Committee, please contact John Fitzgerald, Chief of the Criminal Law and Policy Staff, at John_Fitzgerald@ao.uscourts.gov or (202) 502-1625.

Attachment

cc:   Chief Probation Officers
      Chief Pretrial Services Officers

## Presentence Investigation Reports

**Background**: Rule 32(c) states that "[t]he probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless ... the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its findings on the record." The rule also states, however, that "[i]f the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."

**Cost Savings Options**: Full guideline presentence reports currently cost approximately $1,546 per report. Below are examples of options that require fewer resources, and can help expedite sentencing in certain cases.

1. Waiver of the Presentence Report – When the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and when a presentence report is not otherwise required, the court may waive the presentence report. If the presentence report is waived, and the defendant has at least nine months remaining on an imprisonment sentence, the probation office will prepare a Supplemental Report to the Bureau of Prisons (BOP). This abbreviated report assists the BOP in designation and classification determinations. These reports cost approximately $744 per report.

2. Modified Presentence Report – In any case, the court may order the probation officer to prepare a modified presentence investigation report. These reports are designed to give the court flexibility in ordering shorter reports in appropriate cases. For example, these reports could be used in a case involving a single defendant, convicted on a single count of conviction where the defendant has no or few ties to the United States and is not exposed to a lengthy term of imprisonment or supervision (e.g., class A misdemeanors, class E felonies, cases in which the plea agreements contemplate a brief period of imprisonment or no prison at all, deportable aliens). Modified presentence investigation reports may not be suitable if the defendant has a history of violence or sexual offenses, significant ties to the country, identified risks and needs (e.g., current substance abuse or mental health issues), or significant assets, since these issues tend to have greater influence on the sentence imposed, Bureau of Prisons designation and programming, and post-conviction supervision. These reports cost approximately $744 per report.

3. Expedited Sentencing Report – Sometimes referred to as "worksheets," these reports may be ordered when the court waives the preparation of a presentence report and only requires that the probation office calculate the offense level and criminal history score needed to determine the guideline range. These reports do not include a narrative description of the offense or the defendant's personal history. These reports cost approximately $335 per report.

## Early Termination of Supervision

**Background**: Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice.

**Cost Savings Options**: The average annual cost of supervision in fiscal year 2010 was approximately $3,938 per case.[1] Terminating appropriate cases before they reach their full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism. The general criteria for officers in assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

1. Stable community reintegration (e.g., residence, family, employment);

2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision (the existence of an outstanding financial penalty *per se* does not adversely affect early termination eligibility as long as the offender has been paying in accordance with the payment plan);

3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

5. No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

6. No recent evidence of alcohol or drug abuse;

7. No recent psychiatric episodes;

8. No identifiable risk to the safety of any identifiable victim; and

9. No identifiable risk to public safety reflected in the risk assessment.

AO staff examined whether offenders whose supervision was terminated early (ET) had different recidivism rates than similar offenders who were terminated at the full completion of their supervision term (FT). Results indicated that ET cases were arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often. From a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize public safety.

---

[1] By comparison, the average annual cost of imprisonment in fiscal year 2010 was $28,284 per inmate.

## Location Monitoring Conditions

**Background**: Under 18 U.S.C. § 3142(c)(1)(B), the court is authorized to order participation in the location monitoring program as a condition of pretrial release. The statute also requires the court to impose electronic monitoring as a condition of pretrial release in any case that involves a minor victim of certain sex offenses. Under 18 U.S.C. § 3563(b)(19), the court is authorized to impose a condition requiring that the probationer remain at his place of residence during non-working hours and, if the court finds it appropriate, that compliance with this condition be monitored by telephonic or electronic signaling devices (including global positioning systems (GPS)). The statute specifies that the home detention and home incarceration components of the program will be used only as an alternative to incarceration. This provision also applies to supervised release per 18 U.S.C. § 3583(d).

**Cost Savings Options**: The court can choose from several location monitoring technologies. Each technology offers distinct advantages, and each carries its own costs (consisting of equipment rental, monitoring time, and labor). Below are several examples of location monitoring technologies.

1. Voice Verification System – Telephones and automated systems verify a person's presence without traditional electronic monitoring equipment (i.e., no transmitter, receivers, tether) and serves as a cost-effective solution for monitoring compliance. The average daily cost for this technology in fiscal year 2011 was $1.60.

2. Radio Frequency (RF) Technology – A person's presence is verified at a location using a transmitter and receiver; 24-hour electronic surveillance designed to alert an officer when a participant leaves a location, returns home late from a pre-approved schedule, or tampers with the equipment. RF only monitors when the transmitter is in range of the receiver, and violations cannot be detected when the participant is out of range. The average daily cost for this technology in fiscal year 2011 was $3.50.

3. Passive GPS – Uses satellite tracking to record a participant's location from the time of departure from the residence until return. While home, the GPS monitor downloads the tracking information to the vendor's management system, which plots it into a mapping system for case management purposes. GPS is useful when there is no third party risk and real-time alerts are not needed. The average daily cost for this technology in fiscal year 2011 was approximately $6.00.

4. Active GPS – Allows continuous monitoring of a person's movements through an active tracking device, which may contain a GPS receiver, a cellular modem, a radio frequency receiver/dialer, or motion sensor. Appropriate for higher risk cases where an officer's immediate notification of an alert would be sought. The average daily cost for this technology in fiscal year 2011 was approximately $8.00.

5. Hybrid GPS – Allows monitoring of a person's movements through a combination of passive, active and RF technology. Officers may choose to utilize "hybrid location monitoring devices" because it offers multiple location monitoring technologies that can increase tracking accuracy in the community through the use of GPS while also better ensuring compliance to a curfew in their home through the use of Radio Frequency (RF)

3

technology. The average daily cost for this technology in fiscal year 2011 was approximately $7.00.

In addition to the cost of the technology, LM cases place greater requirements on staff, and therefore require the expenditure of greater salary resources. The table below reflects the average, per case salary costs for officers supervising LM cases (based on the national average salary for officers):

|  | No LM Condition | Voice Verification | Radio Frequency | GPS |
|---|---|---|---|---|
| **Pretrial Services** | $1,211 | $1,298 | $1,492 | $1637 |
| **Probation** | $1,311 | $1,442 | $1,705 | $1,901 |

Judges are encouraged to consider the costs of the technology and staff time when imposing location monitoring conditions.

5

## Imposition and Modification of Special Conditions (Including Treatment)

**Background:** One of the most well established evidence-based principles is that supervision interventions should be targeted based on the specific risk levels in each case. Often referred to as the "risk principle," this theory recognizes it is imprudent to take a one-size-fits-all approach to supervision and treatment. Resources should be delivered to defendants and offenders at higher risk of noncompliance or recidivism, which is generally measured by actuarial risk assessment instruments.[2] It is through intervention in higher risk cases that courts and officers efficiently further the goal of public safety during the period of supervision and beyond.

**Cost Savings Options:** Since 2005 the cost of providing treatment services (substance abuse, mental health, and sex offender) to defendants and offenders under federal supervision has risen by nearly 60 percent. Typically, these services are provided by vendors in the community under agreements with the local probation and pretrial services offices and paid from decentralized judiciary funds. In fiscal year 2010, for example, a total of $109,958,412 was spent on these services at an average cost of $1,251 per client.

The tables below summarize data reported by probation and pretrial services offices for fiscal year 2010. The costs shown in the table represent average expenditures per client for some of the most common types of treatment used to satisfy a special condition for substance abuse, mental health, or sex offender treatment.

| Substance Abuse Treatment | Average Spending Per Client |
|---|---|
| Individual Counseling | $ 497 |
| Group Counseling[3] | $ 707 |
| Manualized Cognitive Behavioral Group[4] | $ 779 |
| Short-term Residential | $ 4,025 |
| Long-term Residential | $ 7,572 |

---

[2]Risk assessment instruments are highly structured assessment instruments where the individual items are assigned numerical weights, combined in some mechanical way, and the scores are related to criminal behavior. The primary instruments used by the federal pretrial services and probation system are the Pretrial Services Risk Assessment, the Risk Prediction Index, and the Post Conviction Risk Assessment.

[3]While the average spent per client on group counseling is more than the average spent on individual counseling, it should be noted that group counseling sessions generally occur with greater frequency and over a longer period of time.

[4]Research shows that cognitive behavioral group treatment is among the most successful interventions with substance-dependent offenders. (Note: D.B. Wilson, L.A. Bouffard, and D.L. McKenzie, "A Quantitative Review of Structured Group-Oriented Cognitive-Behavioral Programs for Offenders," Criminal Justice and Behavior, Vol. 32, No. 2, pp. 172-204, 2005.) When and where available, this should be the default choice of treatment for substance-dependent offenders. *See also, Guide to Judiciary Policy,* Volume 8, Part E, Chapter 5, §550.20.60(b).

6

| Mental Health Treatment | Average Spending Per Client |
|---|---:|
| Individual Counseling | $ 1,040 |
| Group Counseling | $ 675 |
| Cognitive Behavioral Group | $ 590 |

| Sex Offender Treatment | Average Spending Per Client |
|---|---:|
| Individual (pretrial) | $ 842 |
| Individual (post conviction) | $ 1,410 |
| Group (pretrial) | $ 1,210 |
| Group (post conviction) | $ 1,623 |
| Physiological Measures (Plethysmograph, Polygraph, VRT) | $ 383 |

## Imposition and Length of Supervised Release

**Background:** Application Note 1 of the Commentary to USSG §5D1.1 says that the "court may depart from this guideline and not impose a term of supervised release if supervised release is not required by statute and the court determines, after considering the factors set forth in [18 U.S.C. § 3583(c), the defendant's criminal history, and any substance abuse history], that supervised release is not necessary."

**Cost Savings Options:** If supervision is not required by statute or the guidelines, the court should assess whether a term of supervision is necessary. To assist the court in making this determination, officers should consider the risks the defendant poses to community safety and whether supervision can effectively reduce those risks. Among the factors that the court can consider in deciding not to impose supervision are:

1. Stability in the community, home, and employment;
2. Compliance with the terms and conditions of any pretrial services supervision;
3. No aggravating role in the offense of conviction, particularly in large drug or fraud cases;
4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);
5. No recent arrests (other than the count of conviction) and no pending charges;
6. No recent evidence of alcohol or drug abuse;
7. No recent psychiatric episodes;
8. No identifiable risk to the safety of any identifiable victim; and
9. No identifiable risk to public safety based on the results of any risk assessment.

The above list is not exhaustive, but it is designed to assist the court in assessing the need for any period of supervision. Also, the presence of a single factor, by itself, may not sufficiently justify a recommendation for supervision. For example, the fact that restitution is due or that a fine is recommended may not by itself mean that a term of supervision is necessary.

Supervision should not be imposed if the only offense of conviction is an infraction. Similarly, using the above criteria, the court should scrutinize whether it is appropriate to place on supervision a defendant whose only offense of conviction is a class B or C misdemeanor.

In ordering a term of supervision, the court should consider a term that is "sufficient, but not greater than necessary" to satisfy the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) and recognizes the distinctions between a sentence of probation (which includes a punitive component) and a term of supervised release (which is not intended to punish the defendant).

It should be noted that, the guidelines manual effective on November 1, 2011, suggests that the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

8